# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

**BRUCE A. VAN BUSKIRK et al.,**

**Plaintiffs,**

v.

**THE UNITED GROUP OF COMPANIES, INC. et al.,**

**Defendants.**

1:16-cv-881
(GLS/CFH)

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFFS:** | |
| Keller, Rohrback Law Firm<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101 | DAVID J. KO, ESQ. |
| Keller, Rohrback Law Firm<br>3101 North Central Avenue,<br>Suite 1400<br>Phoenix, AZ 85012-2643 | GARY GOTTO, ESQ.<br>RON KILGARD, ESQ. |
| Devine, Snyder LLP<br>52 Corporate Circle, Suite 207<br>Albany, NY 12203 | TERENCE J. DEVINE, ESQ. |
| **FOR THE DEFENDANTS:** | |
| Cozen, O'Connor Law Firm<br>45 Broadway Atrium, 16th Floor<br>New York, NY 10006 | MATTHEW E. LEWITZ, ESQ.<br>MICHAEL B. de LEEUW, ESQ. |
| Cozen, O'Connor Law Firm<br>277 Park Avenue, 20th Floor<br>New York, NY 10172 | TAMAR S. WISE, ESQ. |

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiffs Bruce A. Van Buskirk and Lori A. Van Buskirk commenced

this action against The United Group of Companies, Inc. (UGOC);

DCG/UGOC Funds Management II, LLC; Michael J. Uccellini and Jessica

F. Steffensen as Executor and Execturix, of the Estate of Walter F.

Uccellini; Michael J. Uccellini (collectively, "United Defendants"); MCM

Securities, LLC; and Millennium Credit Markets, LLC (collectively, "MCM

Defendants"),[1] asserting New York State law claims of common law fraud,

breach of fiduciary duty, aiding and abetting a breach of fiduciary duty,

negligent misrepresentation, and unjust enrichment against United

Defendants, as well as aiding and abetting against MCM Defendants.

(*See generally* 2d Am. Compl., Dkt. No. 11.)

Pending is plaintiffs' motion for leave to file a third amended

complaint. (Dkt. No. 67.) In response, defendants assert that plaintiffs'

---

[1] Plaintiffs' case against Davis Capital Group, Inc. and DCG Funds Management, LLC (hereinafter "DCG") has been stayed, (Dkt. No. 41), and Richard W. Davis, Jr. has been terminated as a defendant, (Dkt. No. 50).

motion should be denied because the proposed amendment would be futile, and, in the alternative, request that should plaintiffs' motion be granted, it be conditioned on the payment of reasonable attorneys' fees. (Dkt. No. 72.)  In arguing futility, defendants' incorporate the arguments made in their motion to dismiss, (Dkt. No. 16), "in their entirety," (Dkt. No. 72 at 14).  Thus, the court construes Dkt. No. 72 as a renewal of the motion to dismiss, (Dkt. No. 16), which has been fully briefed by the parties, (Dkt. Nos. 16, 28, 34).  For the reasons that follow, plaintiffs' motion is granted, conditioned upon the payment to defendants of reasonable attorneys' fees in the amount of $7,500.00, and plaintiffs' claim of unjust enrichment is dismissed.

## II. Background

### A. Facts[2]

For a full recitation of the underlying facts, the parties are referred to the court's April 9, 2018 order in *Grasso v. United Group of Companies*, Inc., No. 1:16-cv-965, 2018 WL 1737619 (N.D.N.Y. Apr. 9, 2018), which is a related action that involves a nearly identical complaint and nearly

---

[2]  The facts are drawn from plaintiffs' second amended complaint, (Dkt. No. 11), presented in the light most favorable to them.

identical motion to dismiss briefing.

Summarily, plaintiffs were investors in an income fund created, managed, and/or operated by defendants (hereinafter "the Income Fund"). (2d Am. Compl. ¶¶ 1-8.)  In connection with soliciting plaintiffs' investments in the Income Fund, plaintiffs allege that United Defendants made several factual misrepresentations, including that the Income Fund would invest in secure debt instruments backed by real estate assets that could quickly be converted to cash and would generate a high annual rate of return for investors when, in reality, United Defendants knew the student housing projects faced problems—including low occupancy—which made these returns highly unlikely and risked non-payment of the fund's notes receivable.  (*Id.* ¶ 63.)  Plaintiffs further allege that United Defendants and Edgar Page—an investment advisor who had a substantial stake in the success of the Income Fund and who advised plaintiffs to invest in it even though he knew the projects were struggling—failed to disclose several facts that were material to plaintiffs' investments.  (*Id.* ¶¶ 26-31, 39-40, 47-52, 63.)

Ultimately, "[t]he Income Fund's assets were not invested in securities, real estate assets and/or debt instruments secured by assets,

and/or credible guarantors, but rather were used to make unsecured loans to UGOC [and other related parties]." (*Id.* ¶ 40.) Additionally, United Defendants continued to invest fund assets into the struggling student housing projects, while funneling money to Page. (*Id.* ¶¶ 43, 45-52.) Plaintiffs allege that they would not have chosen to invest in the Income Fund had they known such facts beforehand. (*Id.* ¶¶ 96, 98.) Now, "[u]nder the terms of the [O]perating [A]greement governing the [Income] Fund, [p]laintiffs are unable to liquidate their investment without the approval of the United Defendants." (*Id.* ¶ 98.) Plaintiffs have since requested a return of their investments, which United Defendants denied. (*Id.* ¶ 100.) Plaintiffs assert that their investment in the fund is subject to rescission and/or monetary damages, because it was "procured through unlawful conduct." (*Id.* ¶ 101.)

**B.  Procedural History**

Plaintiffs filed their initial complaint on July 15, 2016, (Compl., Dkt. No. 1), an amended complaint on August 5, 2016, (Am. Compl., Dkt. No. 4), and a second amended complaint on August 29, 2016, (2d Am. Compl.) In all three iterations of their complaint, plaintiffs alleged that they were residents of Cobleskill, New York, and that all defendants were

citizens of either New York or North Carolina.  (Compl. ¶¶ 1-9; Am. Compl. ¶¶ 1-9; 2d Am. Compl. ¶¶ 1-9.)  Defendants moved to dismiss the case on the merits.  (Dkt. No. 16.)

Because plaintiffs' complaints allege only violations of state law, and they did not establish complete diversity of citizenship amongst the parties, the court ordered plaintiffs to show cause as to why the action should not be dismissed *sua sponte* pursuant to Federal Rule of Civil Procedure 12(h)(3) for lack of subject matter jurisdiction.  (Dkt. No. 52.)  Plaintiffs submitted a brief response, arguing that the court had diversity jurisdiction over this case because plaintiffs sold their residence in New York and now reside in Florida.  (Dkt. No. 53.)  In support of this argument, plaintiffs attached as exhibits their Florida drivers licenses, which were dated December 2016, as well as then-recent mail that was sent by defendants to plaintiffs at plaintiffs' Florida residence.  (*Id.*)  But that evidence did not establish that plaintiffs were domiciled in Florida *at the time of the filing of their complaint*.  Accordingly, the court dismissed the case for lack of subject matter jurisdiction and entered judgment in favor of defendants.  (Dkt. Nos. 55, 56.)

Plaintiffs moved for reconsideration, attaching to their motion

declarations swearing that they were domiciled in Florida at the time of the filing of their complaint.  (Dkt. No. 57.)  This motion was denied because it was not the appropriate time or manner for the introduction of this evidence, and because it failed to invoke any of the three grounds upon which a reconsideration motion may be properly based.  (Dkt. No. 60.)

Plaintiffs appealed to the Second Circuit, (Dkt. No. 61), which reversed the court's decision, holding:

> [W]e vacate the judgment of the district court and remand so that [p]laintiffs may amend their complaint and so that the district court may determine whether the evidence provided by [p]laintiffs—as a whole—is sufficient to invoke federal diversity jurisdiction.  On remand, the district court may also consider whether an award of costs to [d]efendants—including attorney's fees—would mitigate the prejudice incurred by [d]efendants through this late amendment.

*Van Buskirk v. United Group of Companies*, 935 F.3d 49, 56 (2d Cir. 2019) (citation omitted).  The Second Circuit noted that "the parties shall bear their own costs on appeal."  *Id.*

Plaintiffs then filed the pending motion, seeking leave to amend their complaint for a third time.  (Dkt. No. 67.)  In compliance with the Local Rules of Practice in this District, plaintiffs attached as an exhibit to their

motion a redlined version of their proposed pleading, showing the changes between their proposed amended complaint and the operative complaint. (Dkt. No. 67, Attach. 1.) The changes plaintiffs seek to make to their second amended complaint relate to the domiciles of the parties, in an apparent effort to cure the previously noted jurisdictional defect. (*Id.*) In response, defendants argue that leave to amend should not be granted because any amendment would be futile, but that, if it is to be granted, they should be awarded $38,371.91 in attorneys' fees and costs. (Dkt. No. 72.)

### III. Standards of Review

### A. Motion for Leave to Amend

As relevant here, Fed. R. Civ. P. 15 allows a party not otherwise permitted to amend its pleading to do so with leave of the court. *See* Fed. R. Civ. P. 15(a)(2). The Rule mandates that "[t]he court should freely give leave when justice so requires." *Id.* Barring "futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party," leave should generally be granted. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008). "The non-moving party

bears the burden of establishing why leave to amend should not be granted." *Linares v. Richards*, No. 08-CV-3243, 2009 WL 2386083, at *9 (E.D.N.Y. Aug. 3, 2009) (citations omitted).

## B.    Motion to Dismiss

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP,* 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

## IV.  Discussion

## A.    Plaintiffs' Motion for Leave to Amend

Plaintiffs seek to amend their complaint to cure the jurisdictional defect that exists in the previous three iterations of their complaint.  (Dkt. No. 67.)  Specifically, plaintiffs seek to amend their complaint to add that plaintiffs have been domiciled in Florida since May 2013, and that each defendant is either domiciled in New York, North Carolina, or Delaware; and not Florida.  (Dkt. No. 67, Attach. 1 ¶¶ 1-9.)

Defendants argue that leave to amend should be denied, because permitting a third amendment would be futile.  (Dkt. No. 72 at 14-21.) Prejudice that defendants would allegedly face from the grant of plaintiffs'

leave to amend, although not affirmatively argued, was also a theme in their response.  (*Id.* at 2, 4).  For the reasons that follow, defendants have not offered sufficient justification for denying plaintiffs' motion for leave to amend their second amended complaint.

1.    *Prejudice*

First, "courts have recognized that prejudice may well be the most important consideration when deciding a motion to amend."  *Lin v. Toyo Food, Inc.*, No. 12-CV-7392, 2016 WL 4502040, at *2 (S.D.N.Y. Aug. 26, 2016).  In deciding the prejudice question, courts should consider whether the amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction."  *See Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000). Bearing on these factors is "[t]he procedural posture of a case, including the stage of discovery and whether dispositive motions have been filed." *A.V.E.L.A., Inc. v. Estate of Monroe*, 34 F. Supp. 3d 311, 317 (S.D.N.Y. 2014).

The court is mindful that defendants will suffer some prejudice by a

grant of the motion for leave to amend.  Indeed, plaintiffs had numerous chances to show that the court had jurisdiction over the case, and the evidence that ultimately proves complete diversity of citizenship amongst the parties was available well before they submitted it.  However, even though this action commenced more than three years ago, the litigation is still in its early stages given that an answer has not been filed and discovery has not yet commenced.  Accordingly, the amendment itself—which merely establishes subject matter jurisdiction—will not force defendants to expend significant additional resources to conduct discovery and prepare for trial, and will not further delay the resolution of the dispute.[3]

### 2. *Futility*

A proposed amendment is considered futile if it "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *Panther Partners Inc. v. Ikanos Comms, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (citation omitted).  The amendment

---

[3] As noted below, in order to offset any prejudice defendants will suffer from the court granting the pending motion, they will be reimbursed, in part, for the additional resources they were forced to expend as a result of plaintiffs' failure to cure their jurisdictional defect at the first instance.

should be denied as futile only "if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001). Accordingly, "the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *IBEW Local Union No. 58, Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Group, PLC*, 783 F.3d 383, 389 (2d Cir. 2015). In making this decision, courts must "consider the proposed amendments along with the remainder of the complaint, accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor." *Panther Partners*, 681 F.3d at 119 (internal quotation marks, citations, and alterations omitted).

Here, plaintiffs' case was dismissed *sua sponte* because the first three iterations of plaintiffs' complaint did not adequately allege subject matter jurisdiction. (Dkt. Nos. 52-63.) Plaintiffs' proposed amendment cures this prior defect by adequately alleging there was complete diversity of citizenship amongst the parties at the time of the filing of the initial complaint. (Dkt. No. 67, Attach. 1 at 2-4.)

Defendants argue that granting plaintiffs' leave to amend would be

futile because plaintiffs' claims "fail as a matter of law." (Dkt. No. 72 at 14.)  Defendants' arguments are not new.  In their response to the pending motion, they incorporate the arguments made in their motion to dismiss "in their entirety." (Dkt. No. 72 at 14.)  Although defendants' motion to dismiss was denied as moot, (Dkt. No. 55), and thus—contrary to their assertion, (Dkt. No. 72 at 8, 21)—is not pending before the court, the motion has been fully briefed, (Dkt. Nos. 16, 28, 34), and defendants' futility arguments require the court to resolve certain issues discussed therein.  Moreover, the court has already addressed substantially the same issues in *Grasso*.

First, unlike the plaintiffs' claims of fraud as to certain investments at issue in *Grasso*, plaintiffs claims here were filed within the statute of limitations period.  According to N.Y. C.P.L.R. § 213(8), the statute of limitations for fraud is the greater of either six years from when the cause of action accrued or two years from the time a plaintiff discovered the fraud or could have discovered it with reasonable diligence.[4]  Plaintiffs'

---

[4] This same statute of limitations framework applies to plaintiffs' claims of breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, and negligent misrepresentation, which all sound in fraud.  *See Ajamian v. Zakarian*, No. 1:14-CV-321, 2014 WL 4247784, at *8 (N.D.N.Y. Aug. 26, 2014); *Gonzalski v. Prudential Ins. Co. of Am.*, No: 5:02-CV-921, 2004 WL 556686, at *1 n.6 (N.D.N.Y. Mar. 22, 2004).

claims accrued at the moment of their investments. *See Grasso*, 2018 WL 1737619, at *7. Because they executed the subscription agreements on August 18, 2010, and filed their complaint on July 15, 2016, plaintiffs' claims of fraud, including their claims of breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, and negligent misrepresentation, are timely.

On the other hand, plaintiffs' claim of unjust enrichment is time barred. Under New York law, the statute of limitations applicable to an unjust enrichment claim is "six years where plaintiff seeks an equitable remedy, but three years where plaintiff seeks monetary damages." *Matana v. Merkin*, 957 F. Supp. 2d 473, 494 (S.D.N.Y. 2013) (citing *Ingrami v. Rovner*, 45 A.D.3d 806, 808 (2d Dep't 2007)). Here, plaintiffs seek "restitution of the losses sustained by [p]laintiffs from their investment in the Income Fund." (2d Am. Compl. ¶ 132.) Plaintiffs argue that the six-year statute of limitations is applicable, (Dkt. No. 28 at 40-41), while United Defendants claim the three-year period applies, (Dkt. No. 16, Attach. 1 at 14). Because plaintiffs effectively seek compensatory monetary damages and not equitable relief, the three-year statute of limitations governs plaintiffs' claim of unjust enrichment. *See*

*Ruzhinskaya v. Healthport Tech., LLC*, 311 F.R.D. 87, 109 (S.D.N.Y. 2015) (citing *Access Point Med., LLC v. Mandell*, 106 A.D.3d 40 (1st Dep't 2013)); *Grynberg v. Eni S.p.A.*, No. 06 Civ. 6495, 2007 WL 2584727, at *3 (S.D.N.Y. Sept. 5, 2007) (citing, *inter alia*, *Lambert v. Skylar*, 817 A.D.3d 564, 565 (2d Dep't 2006)).

Generally, the three-year period begins to run "upon the occurrence of the wrongful act giving rise to a duty of restitution and not from the time the facts constituting the fraud are discovered." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 364 (2d Cir. 2003) (quoting *Coombs v. Jervier*, 74 A.D.3d 724, 724 (2d Dep't 2010)). Plaintiffs argue that the period did not begin to run until "[United] Defendants denied plaintiffs' demand to refund their investments," shortly before they filed their complaint, because the limitations period for claims "arising out of a fiduciary relationship does not commence until the fiduciary has openly repudiated his or her obligation or the relationship has been otherwise terminated." (Dkt. No. 28 at 40-41 (quoting *Golden Pac. Bancorp. v. F.D.I.C.*, 273 F.3d 509, 518-19 (2d Cir. 2001)) (internal quotation marks omitted).) But this doctrine "only applies to a plaintiff seeking equitable relief, not one seeking monetary damages." *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp.3d 377, 398

(E.D.N.Y. 2018) (citation omitted).

Thus, the three-year period began to run on August 18, 2010 when plaintiffs executed the subscription agreements.  Because plaintiffs did not bring their unjust enrichment claim until July 15, 2016, the claim is untimely.

In any event, even if plaintiffs' claim was timely, plaintiffs' unjust enrichment claim fails on the merits for the same reasons set forth in *Grasso*, 2018 WL 1737619, at *9 (Dkt. No. 56 at 26-27, 1:16-cv-965).  "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution."  *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotation marks and citation omitted).  United Defendants point out that only the Income Fund, and not United Defendants themselves, received a benefit.  (Dkt. No. 16, Attach. 1 at 31.)  Indeed, the second amended complaint demonstrates that plaintiffs executed subscription agreements with the Income Fund for the acquisition of membership interests in the fund in exchange for money.  (2d Am. Compl. ¶ 60.)

Plaintiffs do not allege, and defendants do not argue, that the

subscription agreements are invalid or unenforceable.  It is well-settled

under New York law that "[t]he theory of unjust enrichment lies as a

quasi-contract claim.  It is an obligation imposed by equity to prevent

injustice, in the absence of an actual agreement between the parties

concerned."  *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d

132, 142 (2009) (internal quotation marks and citation omitted); *see*

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987)

("The existence of a valid and enforceable written contract governing a

particular subject matter ordinarily precludes recovery in quasi contract for

events arising out of the same subject matter[.]").

Unless the Income Fund obtained plaintiffs' investments through

fraud, it was entitled to the total amount of investments in accordance with

the subscription agreements that plaintiffs entered into.  As such, plaintiffs

have a remedy for money damages by virtue of their fraud claims,

stemming from their written agreement, which precludes an equitable

claim arising out of the same subject matter.  *See IDT Corp.*, 12 N.Y.3d

at 142; *Clark-Fitzpatrick, Inc.*, 70 N.Y.2d at 388-89.  Accordingly, the

proposed amended complaint fails to state a claim for unjust enrichment,

and that claim is dismissed.

The court has carefully considered defendants' remaining arguments and finds them to be without merit. In particular, as the court explained in *Grasso*, 2018 WL 1737619, at *9 (Dkt. No. 56 at 27-28, 1:16-cv-965), a resolution of defendants' arguments regarding an agency relationship between Page and United Defendants, (Dkt. No. 16, Attach. 1 at 15-18), as well as whether United Defendants owed plaintiffs a fiduciary duty, (*id.* at 27-29), or maintained some other type of "privity-like" relationship, (*id.* at 30), require a more fact-specific inquiry that cannot be conducted at this stage, before discovery has commenced. Thus, the remainder of plaintiffs' claims survive the motion to dismiss.

It stands to reason that, if even one of plaintiffs' claims can survive a motion to dismiss, then plaintiffs' proposed amendment, which would merely cure the jurisdictional defect that existed in the previous three iterations, is not futile. Here, as discussed, although some of defendants' arguments have merit, and plaintiffs' unjust enrichment claim is hereby dismissed, plaintiffs' remaining claims are sufficient to survive the motion to dismiss. Defendants are free to renew their arguments after discovery.

Accordingly, plaintiffs' motion for leave to amend, (Dkt. No. 67), is granted.

**B.    Defendants' Request for Attorneys' Fees and Costs**

Generally, the so-called "American Rule" mandates "each party to bear his own litigation expenses, including attorney's fees, regardless whether he wins or loses." *Fox v. Vice*, 563 U.S. 826, 832 (2011) (citation omitted).  However, the court has inherent power to "use its discretion to impose conditions on the grant of leave to amend." *I.C. v. Delta Galil USA*, No. 1:14-cv-7289, 2016 WL 6208561, at *2 (S.D.N.Y. Oct. 24, 2016) (citations omitted).  And it is well settled that an award of attorneys' fees and costs for the non-moving party is a condition that the court may impose.  *See, e.g.*, *Combustion Prods. Mgmt, Inc. v. AES Corp.*, No. 5:05-CV-00929, 2006 WL 6816644, at *8 (N.D.N.Y. Jun. 27, 2006) ("When granting leave to amend, courts have discretion to impose reasonable conditions, including the imposition of attorney's fees, in order to address prejudice that the opposing party will suffer as a result of the amendment."); *Hayden v. Feldman*, 159 F.R.D. 452, 454-55 (S.D.N.Y. 1995) (awarding fees to defendant who "would not have been put to the expense of moving to dismiss the faulty Third Amended Complaint had plaintiffs filed a proper complaint at the outset").

Indeed, "[a]warding attorneys' fees as a condition of granting leave

to amend provides a means to 'mitigate the additional expenses that [defendants] . . . incurred . . . attributable to plaintiff's counsel's failure to plead his client's case properly.'" *Diego Beekman Mutual Housing Assoc. Dev. Fund Corp. Hdfc v. Dish Network, L.L.C.*, No. 15 Civ. 1094, 2016 WL 1060328, at *8 (S.D.N.Y. Mar. 15, 2016) (quoting *Glob. Energy & Mgmt., LLC v. Xethanol Corp.*, No. 07 Civ. 11049, 2009 WL 464449, at *4 (S.D.N.Y. Feb. 24, 2009)).

Defendants request $3,707.50 in attorneys' fees for legal work related to plaintiffs' response to the court's order to show cause; $1,485.00 in attorneys' fees for legal work related to opposing plaintiffs' motion for reconsideration; $27,642.41 in attorneys' fees and costs for legal work related to opposing plaintiffs' appeal to the Second Circuit; and $5,537.00 in attorneys' fees for legal work related to opposing the pending motion.  (Dkt. No. 72 at 12.)  Defendants supplemented their response to plaintiffs' motion for leave to amend with an attorney declaration and various invoices and other attorney billing records which are attached as exhibits to the declaration.  (Dkt. No. 73.)  The declaration and its exhibits establish that defendants actually incurred the amounts of attorneys' fees and costs requested for all categories of fees and costs except for those

incurred by responding to the pending motion.  (*Id.*)

Defendants' request is effectively a request for sanctions vis-à-vis attorneys' fees, and not a request for an award of fees in the general sense.  As previously noted, in remanding this case back to this court, the Second Circuit expressly noted that an award of attorneys' fees may "mitigate the prejudice incurred by [d]efendants" as a result of plaintiffs' "failure to provide the district court with all relevant evidence at the time of the order to show cause."  *Van Buskirk*, 935 F.3d at 52, 56.  Defendants incurred significant costs as a direct result of plaintiffs' slipshod response to the court's order to show cause.  The evidence that ultimately proved the existence of complete diversity was available to plaintiffs' throughout the litigation, and it was only until their motion for reconsideration—after filing three iterations of the complaint and responding to an order to show cause on this exact issue—where they provided it to the court.

Accordingly, based on the aforementioned case law which shows that courts within the Second Circuit commonly award attorneys' fees and costs to offset prejudice in similar situations, defendants' are entitled to the reasonable attorneys' fees incurred in litigating the jurisdictional dispute in this court, as well as those incurred in responding to plaintiffs'

appeal to the Second Circuit.  Plaintiffs' argument that defendants are not entitled to fees associated with the appeal because they were not the prevailing party, (Dkt. No. 76 at 4-5), is misplaced.  Here, in deciding whether a grant of leave to amend should be conditioned on the payment of attorneys' fees, the inquiry is: which expenses would not have been incurred had plaintiffs' cured their jurisdictional defect in the first instance? It is clear that defendants would not have incurred fees from responding to plaintiffs' appeal to the Second Circuit had plaintiffs cured their jurisdictional defect when given the opportunity, because, in that case, the appeal would not have been necessary.

Defendants are not entitled to the $6,233.41 in costs associated with their appeal to the Second Circuit, however.  *See Van Buskirk*, 935 F.3d at 56 ("[T]he parties shall bear their own costs on appeal.").  Additionally, defendants are not entitled to the attorneys' fees incurred by responding to the pending motion.  The court has reviewed the attorney declaration and all billing records and other materials submitted with defendants' response to the pending motion, and did not find any support with regard to defendants' request for attorneys' fees incurred by responding to such motion.  (Dkt. No. 73.)  Defendants have not even informed the court how

many hours were expended in responding to the motion, (Dkt. Nos. 72, 73), and that information is essential for the court to determine the reasonableness of the requested fees.

Turning to the question of what is an appropriate sanction vis-à-vis attorneys' fees, courts use the lodestar method—the product of a reasonable hourly rate and the hours reasonably spent on the case. *See Millea v. Metro–North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *Miller v. City of Ithaca*, No. 3:10-cv-597, 2017 WL 61947, at *2 (N.D.N.Y. Jan. 5, 2017). Generally, the district court relies on the prevailing hourly rate from the district in which it sits in calculating the lodestar. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 191 (2d Cir. 2008). However, "a district court may use . . . some rate in between the out-of-district rate sought and the rates charged by local attorneys . . . in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates." *Id.*; *see Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 289–90 (2d Cir. 2011). In determining what a reasonable client would be willing to pay, the court considers several factors, including:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, ... and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184.

The four Cozen, O'Connor attorneys involved in this case are not local attorneys, but based in New York City. (Dkt. No. 72 at 21.) According to defendants' attorney declaration, Michael de Leeuw, a shareholder with twenty-two years of experience, spent 4.6 hours working on the case at a rate of $675 per hour; Tamar Wise, a member with eleven years of experience spent 25.1 hours at a rate of $550 per hour; Matthew Lewitz, an associate with seven years of experience, spent 16.1 hours at a rate of $435 per hour; and James Castle, an associate with four years of experience, spent 8.3 hours at a rate of $360 per hour. (Dkt. 73 at 7.) This amounts to $26,901.50 in attorneys' fees, which appropriately does not include costs associated with defendants' response to plaintiffs'

appeal to the Second Circuit, or attorneys' fees associated with responding to the pending motion.

Defendants argue that using their out-of-district rates to calculate reasonable attorneys' fees here is appropriate given the relatively complex nature of the case, (Dkt. No. 72 at 13), but there are a number of in-district firms that are well-equipped to handle this case at in-district rates. However, given the particularized showing of defendants' attorneys' expertise, (Dkt. No. 76 at 3-6), the length of time spent on the case, (*id.* at 7), the detailed-billing records submitted by defendants, (Dkt. No. 73, Attachs. 2-4), the severe business consequences defendants face, and the fact that the clients consented to the New York City rates during the course of the litigation, (Dkt. No. 72 at 13), an award of attorneys' fees at the higher end of the prevailing district rate is reasonable.

As such, the court adopts the following rates that reflects the court's estimate, based on its overall sense of the suit, of the presumptively reasonable rate for each attorney presented by defendants: (1) Michael de Leeuw: 4.6 hours at $450 per hour; (2) Tamar Wise: 25.1 hours at $400 per hour; (3) Matthew Lewitz: 16.1 hours at $280 per hour; and (4) James Castle: 8.3 hours at $280 per hour. *See Universal Instruments*

*Corp. v. Micro Sys. Engineering, Inc.*, No. 3:13-cv-831, 2018 WL 2604817, at *3 (N.D.N.Y. Jun. 4, 2018).  This amounts to $18,942 in attorneys' fees.

A district court also has discretion to further reduce the requested fees "as a practical means of trimming fat from a fee application." *McDonald ex rel. Prendergast v. Pension Plan of the NYSA–ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (internal quotation marks and citation omitted).  In determining the appropriate fee, district courts have substantial deference and may use estimates based on their overall sense of a suit.  *See Fox*, 563 U.S. at 838.  The court has carefully reviewed the record and has considered all of the facts and arguments put forth by all parties, and in its discretion finds that an appropriate award of attorneys' fees in this case is $7,500.00.  While it is true that plaintiffs delayed the resolution of the case by not adequately alleging complete diversity even after the court brought the issue to their attention, there is no indication that the delay was purposeful, that they had any intent to deceive the court, or that they participated in any other sanctionable conduct.

Accordingly, plaintiffs' leave to file a third amended complaint is conditioned upon their payment to defendants of $7,500.00, representing

a portion of the attorneys' fees incurred by defendants from responding to the court's order to show cause, plaintiffs' motion for reconsideration, and plaintiffs' appeal to the Second Circuit.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' renewed motion to dismiss (Dkt. Nos. 16, 72) is **GRANTED IN PART** and **DENIED IN PART** as follows:

> **GRANTED** as to plaintiffs' unjust enrichment claim, which claim is **DISMISSED**; and
>
> **DENIED** in all other respects; and it is further

**ORDERED** that plaintiffs' motion for leave to amend their second amended complaint (Dkt. No. 67) is **GRANTED** conditioned upon plaintiffs' payment to defendants' of $7,500.00 within twenty-one (21) days of this Order; and it is further

**ORDERED** that plaintiffs' failure to comply with this Order as it pertains to the payment of $7,500.00 will result in dismissal without further action of the court; and it is further

**ORDERED** that plaintiffs must file a third amended complaint within fourteen (14) days of the date of their payment to defendants' of

$7,500.00; and it is further

**ORDERED** that, if a third amended complaint is not filed within fourteen (14) days of said payment, the action will be dismissed without further order of the court; and it is further

**ORDERED** that defendants' must respond to plaintiffs' third amended complaint within the time allotted by the rules; and it is further

**ORDERED** that, in the event that plaintiffs timely pay defendants' $7,500.00, plaintiffs timely file a third amended complaint, and defendants timely respond to the third amended complaint, the parties shall contact Magistrate Judge Christian F. Hummel to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 2, 2020
Albany, New York

Gary L. Sharpe
U.S. District Judge